United States District Court
Middle District of Florida
Orlando Division

**SAMSON BESHIA,**

    *Plaintiff,*

V.                                        NO. 6:17-CV-1117-ORL-RBD-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

## Report & Recommendation

This is a case under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Samson Beshia's claim for disability insurance benefits.[1] He seeks reversal and remand based on the Administrative Law Judge's ("ALJ's") treatment of an opinion of Alex Perdomo, M.D.; the ALJ's failure to address a pre-hearing request to issue a subpoena to Dr. Perdomo; and the ALJ's assessment of a disability evaluation by the Department of Veterans Affairs ("VA"). Doc. 15. The records summarized in this report and recommendation concern those issues. Summaries of other records are in the ALJ's opinion, Tr. 17–25, and the

---

[1]The Social Security Administration ("SSA") uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of a denial of benefits. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906. If dissatisfied with the initial determination, the claimant may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982. If the Appeals Council denies review, the claimant may file an action in federal district court. 20 C.F.R. § 404.981.

parties' briefs, Docs. 15, 18.

I. **Background**

Beshia was born in 1969. Tr. 247. He completed at least four years of college, Tr. 273, and has experience as a physician's assistant for a private company and the United States Army.[2] Tr. 282. He served in the military from May 2011 to July 2014. Tr. 247. He last worked in July 2014. Tr. 272.

Beshia alleges he became disabled on July 20, 2014, from a neck injury, degenerative arthritis of the cervical and lumbar spine, left patellar chondromalacia, right patellar chondromalacia, neuropathy in the right hand, right lower extremity radiculopathy, sciatica associated with lumbar degenerative disc disease, myopia, and presbyopia. Tr. 140–41. He is insured through 2019. Tr. 256. The period under consideration is July 20, 2014 (the alleged onset date), to December 6, 2016 (the date of the ALJ's decision).

Beshia proceeded through the administrative process, failing at each level. Tr. 2, 14, 129, 140. This case followed. Doc. 1.

II. **ALJ's Decision**

At step one,[3] the ALJ found Beshia has not engaged in substantial gainful

---

[2]Beshia's earliest work as a physician assistant began in 2009. Tr. 282. He stated that, before then, he was in school and did not "remember the rest." Tr. 282. At the hearing, he stated he had previously worked for a "family business in Maryland." Tr. 47.

[3]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) he is engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, (3) the impairment or combination of impairments meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) he can perform any of his past relevant work given his residual functional capacity ("RFC"), and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of persuasion through step four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).

activity since July 20, 2014.[4] Tr. 20.

At step two, the ALJ found Beshia suffers from severe impairments of lumbar and cervical degenerative disc disease, osteoarthritis, obesity, knee impairment, and sciatica. Tr. 20. The ALJ found Beshia's hypertension non-severe. Tr. 20.

At step three, the ALJ found Beshia has no impairment or combination of impairments that meets or medically equals the severity of any impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. He particularly considered listings 1.02 (dysfunction of a joint), 1.4 (disorders of the spine), and Social Security Ruling 02-1p (obesity). Tr. 20.

After stating he had considered the entire record and summarizing the medical evidence, the ALJ found Beshia had the residual functional capacity ("RFC")[5] to perform sedentary work with additional limitations:

> [Beshia] is limited to unskilled work. He can occasionally stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps or stairs. He should avoid exposure to hazards such as heights or machinery with moving parts. He can frequently reach (including overhead) with the right upper extremity.

Tr. 20. The ALJ summarized the bases for the RFC:

> Overall, the claimant's treatment history has been conservative. Surgical intervention has not been recommended. Also, physical

---

[4] The ALJ observed that Beshia had begun working in July 2016 on a "probationary basis" for 24 hours a week at $47 an hour. Tr. 20. At the hearing, Beshia explained he had begun working as a physician's assistant at a correctional facility and worked whenever they needed him. Tr. 38–42. The ALJ found the record did not show if he worked every week. Tr. 38. Giving Beshia "the benefit of the doubt," the ALJ found the work was not substantial gainful activity. Tr. 20.

[5] A claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The SSA uses the RFC at step four to decide if the claimant can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy he can perform. 20 C.F.R. § 404.1545(a)(5).

> findings on examination do not support the alleged severity of the claimant's limitation. Furthermore, the claimant is currently working; he started working in July 2016, working 24 hours a week as a physician's assistant (Hearing Testimony). He said he takes breaks between working to stretch and do breathing exercises, approximately three to four in the morning and two to four in the afternoon (Hearing Testimony). However, he does not take pain medications while at work (Hearing Testimony). Thus, overall, I find the evidence indicates the claimant is capable of work at the sedentary exertional level due to the combined effect of his impairments, with additional postural limitations due to his degenerative disc disease and degenerative joint disease, reaching limitation due to effects of cervical degenerative disc disease, and environmental limitations due to his testimony regarding occasional vertigo.

Tr. 23.

At step four, the ALJ found Beshia cannot perform his past relevant work.[6] Tr. 23–24.

At step five, the ALJ found Beshia can perform the jobs of document preparer, call-out operator, and addressor, and those jobs exist in significant numbers in the national economy. Tr. 25. The ALJ therefore found no disability. Tr. 25.

The day before the administrative hearing, Beshia asked the ALJ to alternatively consider a closed period of disability from July 2013 to July 2016. Tr. 270. At the hearing, his attorney asked the ALJ to consider a closed period of disability from July 2014 to July 2016.[7] Tr. 96. The ALJ found the evidence does not

---

[6] "Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. § 404.1560.

[7] In the written request, Beshia asked the ALJ to consider a closed period of disability beginning July 2013, stating that is when he was discharged from the military. Tr. 270. His disability application lists July 2014 as the disability onset date, Tr. 141, and that is the date his attorney requested at the hearing for the beginning of a closed period, Tr. 96. The disability application lists July 20, 2014, the onset date, as his last date of military service. Tr. 247, 282. It is unclear whether the discrepancy in the year

4

support a closed period of disability. Tr. 17.

### III. Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* A court must affirm an ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

### IV. Law & Analysis[8]

To obtain benefits, a claimant must demonstrate he is disabled. 20 C.F.R. § 404.1512(a). A claimant is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant may obtain benefits for a "closed period"—a finite time of disability starting and stopping before the date of the ALJ's decision. *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

---

was an error by Beshia. He does not raise any issue concerning the dates of consideration for the closed period.

[8]The Commissioner revised regulations on the consideration of medical evidence for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). Beshia filed his claim before that date. All citations are to the regulations in effect when he filed his claim.

A.    *Treatment of Dr. Perdomo's Opinion*

Beshia's first argument concerns the ALJ's treatment of Dr. Perdomo's opinion. Doc. 15 at 8–11.

Regardless of its source, the Social Security Administration ("SSA") "will evaluate every medical opinion" it receives. 20 C.F.R. § 404.1527(c). Within the classification of acceptable medical sources are the following sources: (1) a treating source, which is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you"; (2) a non-treating source, which is "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you"; and (3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case … includ[ing] State agency medical and psychological consultants[.]" 20 C.F.R. § 404.1502. To decide the weight to give a medical opinion, the SSA considers the examining relationship, the treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. § 404.1527(c).

An ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An opinion of a one-time examining doctor is not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). And although "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

In March 2016, Beshia saw Dr. Perdomo for a consultative examination, with

chief complaints of chronic back pain and bilateral knee pain. Tr. 534–37. Beshia recounted his medical history, and Dr. Perdomo listed Beshia's medications. Tr. 535. Dr. Perdomo noted the following. Beshia was wearing a knee brace on his right knee but removed it for the exam. Tr. 535. He walked without an assistive device and down the hallway without difficulty. Tr. 535. He had no trouble getting on and off an exam table and sat comfortably during the exam. Tr. 535. He could not squat because of knee pain. Tr. 535. He could stand on his toes and heels but complained of knee and lower back pain while doing so. Tr. 536. He had no edema, though "[b]ilateral knee crepitus with paripatellar tenderness [was] noticed," with his right knee worse than his left knee. Tr. 536. His "[r]ange of motion of upper extremities [was] affected at the level of the right shoulder with abduction limited to 90 degrees with pain radiated into the base of the neck." Tr. 536. He had "[f]ull range of motion of lower extremities" but "painful bilateral knee flexion" was seen. Tr. 536. A back exam showed he had tenderness in his lower cervical and lumbar spinal processes but no deformity. Tr. 536. He exhibited a "significantly decreased" range of motion in the cervical spine with "forward flexion and extension 20 degrees, lateral flexion 20 degrees both right, and rotation 40 degrees both right and left"; a "significantly decreased" range of motion in the thoracolumbar spine with "forward flexion 40 degrees, extension 0 degrees, lateral flexion and rotation 10 degrees both right and left"; and a negative straight leg raise. Tr. 536. A neurological exam showed he had normal sensory, motor, and deep tendon reflexes; normal coordination and station; normal grip strength and fine manipulation; a normal mental status; no neurological gait deficit; and a negative Romberg test. Tr. 536.

Under "Impression," Dr. Perdomo wrote, "History of chronic back pain with severe musculoskeletal functional limitation on physical exam of cervical and thoracolumbar spine [with] osteoarthritis and degenerative disc disease by history; history of chronic bilateral knee pain with no significant musculoskeletal functional limitation on physical exam except for painful movements; hypertension, poorly controlled; [and] obesity." Tr. 536. Under "Recommendations," Dr. Perdomo wrote:

> Review of limited medical record shows adequate documentation on patient's given history. He will benefit from weight loss, as well as more aggressive physical therapy and home exercise program for back and knee conditioning. He would also benefit from referral to pain management specialist for more aggressive pain management control. He can stand and walk for 3–4 hours a day in an eight-hour workday with normal breaks. **He can sit for 3–4 hours a day in an eight-hour workday with normal breaks**. He can occasionally lift and carry, but should limit the weightlifting to no more than 5–10 lbs. He should also avoid repetitive bending, stooping, crouch, squatting or kneeling. No assistive device for ambulation was required, or manipulative limitations were seen. He was made aware of his elevated systolic blood pressure and encouraged to see his primary care provider for further evaluation and proper treatment.

Tr. 536–37 (emphasis added).

After summarizing Dr. Perdomo's report, the ALJ explained the weight he was giving Dr. Perdomo's opinion:

> I gave the consultative examiner's opinion little weight (Ex. 3F). This was based on a one-time examination, and while this opinion does indicate some impairment, the evidence as a whole indicates that the claimant is limited to sedentary work.

Tr. 23.

Beshia argues substantial evidence does not support the ALJ's reasons for rejecting Dr. Perdomo's opinion, which includes a sitting limitation of three to four hours and therefore precludes even sedentary work.[9] Doc. 15 at 11. The

---

[9]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than 2 hours of an 8-hour workday, and **sitting should generally total approximately 6 hours of an 8-hour**

8

Commissioner disagrees, observing the opinion of a one-time examiner is not entitled to deference or special consideration, and although a doctor's opinion concerning a limitation is relevant, it is not determinative because the ALJ is tasked with determining the RFC. Doc. 18 at 4–8. The Commissioner contends the evidence as a whole, as discussed by the ALJ, supports that, contrary to Dr. Perdomo's opinion, Beshia can perform sedentary work. Doc. 18 at 7–8.

As the law requires, the ALJ stated with particularity the weight given to Dr. Perdomo's opinion ("little weight," Tr. 23) and the reasons for that weight (the opinion was "based on a one-time examination," Tr. 23, and "the evidence as a whole indicates that the claimant is limited to sedentary work," Tr. 23). *See Winschel*, 631 F.3d at 1179.

The first reason is a factually correct statement and a legally permissible consideration. *See* 20 C.F.R. § 404.1527(c). The second reason is supported by substantial evidence. That evidence includes the following evidence highlighted by the ALJ: Beshia's March 2015 report that his back, neck, and knee pain moderately limited his activities, Tr. 21 (citing Ex 1F at 10 (Tr. 351)); a medical referral to pain management rather than to an orthopedic provider, Tr. 22 (citing Ex. 1F at 9[10] (Tr. 349)); predominately "mild" MRI and other testing results, Tr. 22 (citing Ex. 4F at 4–5, 7–9 (Tr. 541–42, 544–46)); Dr. Perdomo's observations during the consultative examination, including that Beshia had no problem getting on and off the exam table and sat comfortably, Tr. 22 (citing Ex. 3F at 3 (Tr. 535)); Beshia's report that a TENS unit was very helpful, Tr. 22 (citing Ex. 4F at 24 (Tr. 561)); in appointment notes, the absence of noted abnormalities and indications of five out of five arm and leg strength and intact sensations, Tr. 22 (citing Ex. 5F at 68 (Tr. 759)); a primary care provider's notation that Beshia was "'stable on current management,'" had no gait or balance

---

**workday**." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (emphasis added).

[10] The ALJ misstated the page number of the exhibit. The correct page is 8.

problem, and did not need a device to ambulate, and recommendations that he "'continue medications as prescribed'" and exercise (such as walking 30 minutes daily) to lose weight, Tr. 22–23 (citing Ex. 4F at 43–44, 47 (Tr. 580–81, 584)); conservative treatment history with no recommendation that he undergo surgery, Tr. 23; and Beshia's return to work as a physician's assistant in July 2016, Tr. 23.

Because the ALJ stated the weight he was giving Dr. Perdomo's opinion, explained the reasons for that weight, considered permissible factors to decide that weight, and substantial evidence supports the reasons, remand to reconsider Dr. Perdomo's opinion is unwarranted.

### B.     *Treatment of the Request to Subpoena Dr. Perdomo*

Beshia's second argument concern's the ALJ's treatment of his pre-hearing request to issue a subpoena to Dr. Perdomo. Doc. 15 at 11–13.

The provision of benefits is subject to the guarantees of due process of law under the Fifth and Fourteenth Amendments of the United States Constitution. *See generally Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976); Program Operations Manual System ("POMS") DI 40515.010.[11] Due process constrains governmental decisions that deprive individuals of property (including disability benefits) and requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 332−33 (internal quotation marks omitted).

Before a court will find a due process violation and remand for reconsideration, a claimant must show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir.

---

[11]The POMS contains "publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). The POMS may be considered persuasive even though it does not have the force of law. *Stoup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003).

10

1985). "This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from [the] claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." Id.; see Hall v. Bowen, 840 F.2d 777, 778 (11th Cir. 1987) (finding no colorable due process claim because the claimant "was represented by counsel and had an opportunity to present evidence").

"When it is reasonably necessary for the full presentation of a case, an [ALJ] may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. § 404.950(d)(1). "Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena … [that] must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. § 404.950(d)(2).

The Hearings, Appeals, and Litigation Law Manual ("HALLEX") "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1. Under HALLEX I-2-5-78(D), "If an ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena."[12] HALLEX I-2-5-78(D). The SSA

---

[12]Beshia applied for benefits on October 8, 2015. Tr. 138, 247. The same day, the SSA filed a transmittal to change I-2-5-78D to read as currently stated. Transmittal I-2-155. Beshia cites the pre-October 8, 2015, version of I-2-5-78D, Doc. 15 at 12, which

11

"require[s] adjudicators at all levels of administrative review to follow agency policy, as set out in" the HALLEX. SSR 13-2p, 2013 WL 621536, at *15 (Feb. 20, 2013).

In August 2016, Beshia's counsel asked the ALJ to issue subpoenas for the administrative hearing. Tr. 333–34. He asked the ALJ to issue a subpoena to Dr. Perdomo and others—a vocational expert to obtain documents on which she would rely for her opinion, a state agency consultant (Glenn Bigsby, D.O.), and a disability adjudicator/examiner (Lorayne Hattal). Tr. 333–34. As the reason for requesting a subpoena to Dr. Perdomo, Beshia's counsel stated:

> Dr. Perdomo's opinion conflicts with Dr. Bigsby's opinion. His testimony is necessary to explain the discrepancies. I would also like to clarify what objective medical evidence, if any, was relied on by Dr. Perdomo in formulating his opinions. I would also like to establish what consideration Dr. Perdomo gave to Mr. Beshia's pain and other symptoms. I would also like to establish whether he has any opinion regarding any additional testing which he feels is necessary for a more definitive and reliable determination of Mr. Beshia's limitations. I would also like to establish any other facts regarding credibility and the weight which should be afforded Dr. Perdomo's opinion. This information cannot be adequately established by any other means. I cannot take his deposition, and no one else can clarify the basis of Dr. Perdomo's opinion. I request the opportunity to cross examine Dr. Perdomo in person.

Tr. 335.

The ALJ addressed the subpoena requests, specifically mentioning only those

---

states, "If an ALJ denies a claimant's request for a subpoena, the ALJ must provide the claimant … written notification of the denial of the request, and enter both the request and the denial notification into the record as exhibits. The denial … must include rationale that explains why the ALJ declined to issue a subpoena to compel production of documentary evidence or appearance and testimony at a hearing or supplemental hearing," https://web.archive.org/web/20140809195854/http://ssa.gov/OP_Home/hallex/I-02/I-2-5-78.html. The Commissioner does not address which version applies here. Ultimately, it does not matter for the analysis, although Beshia's counsel and the ALJ discussed the subpoena request at the end of the hearing. Tr. 94–96. Beshia's counsel briefly mentioned "conflicts" in doctor reports, and the ALJ stated, "We generally don't require their [doctors] production at the hearing. You're certainly free to argue what you just argued, however." Tr. 94–96.

to the vocational expert and the state agency consultant:

> I acknowledge the request for subpoenas submitted by the claimant's representative prior to the hearing (Ex. 14E). An [ALJ] may issue subpoenas for appearance and testimony of witnesses and for the production of documents material to an issue at the hearing when reasonably necessary for the full presentation of a case. However, a sufficient basis for vocational expert testimony can be professional knowledge and experience, as well as reliance on job information available from various government publications or other publications of which the [SSA] takes notice. [SSA] regulation requires me to take administrative notice of reliable job information available from various publications, including the Dictionary of Occupational Titles and other government sources, used by the vocational expert in this case. Thus, I do not find submission of the requested documentation reasonably necessary for the full presentation of the case. With respect to the state agency consultant, I accounted for the fact that this was a non-examining source in assigning weight to the opinion, in accordance with Social Security Ruling 96-9p. I do not find it material to an issue at the hearing or reasonably necessary for the full presentation of the case for them to appear as a witness. Therefore, I have denied [the] request for subpoenas.

Tr. 17 (internal citations omitted).

Citing the HALLEX and observing that the ALJ did not explain why he was denying the request to subpoena Dr. Perdomo, Beshia argues the ALJ violated his due process rights by failing to follow that procedure and failing to provide him an opportunity to cross-examine Dr. Perdomo. Doc. 15 at 11–13. The Commissioner responds there is no constitutional due process violation because the HALLEX neither carries the force of law nor creates judicially enforceable rights, and even if it did, Beshia has shown no prejudice because he "can only speculate that cross-examination of Dr. Perdomo would result in evidence that would support his claim." Doc. 18 at 8–14.

Beshia's argument fails because, at a minimum, he has not shown prejudice

required for remand for reconsideration.[13] *See Kelley*, 761 F.2d at 1540. Dr. Perdomo's report of the consultative examination was comprehensive; it included discussion of (1) Beshia's chief complaint, (2) Beshia's history of present illness, (3) Beshia's medications, (4) Beshia's past medical history, (5) Beshia's family history, (6) Beshia's social history, (7) the results of a physical exam, (8) Beshia's vital signs, (9) Beshia's vision, (10) Dr. Perdomo's impressions, and (11) Dr. Perdomo's recommendations. Tr. 535–37. With the rest of Beshia's medical record, the ALJ possessed and considered Dr. Perdomo's report. *See* Tr. 23. Beshia was represented by counsel well able to argue why the ALJ should or should not adopt Dr. Perdomo's opinion. Beshia has not shown how the ALJ's failure to explain why he was denying the request to subpoena Dr. Perdomo prejudiced him. And Beshia has not shown what Dr. Perdomo's testimony would have been—different from Dr. Perdomo's comprehensive report already before the ALJ—such that Dr. Perdomo's absence from the administrative hearing prejudiced him.

With no showing of prejudice, remand for reconsideration of the request to subpoena Dr. Perdomo is unwarranted.

## C.    *VA's Disability Evaluation*

Beshia's third argument concerns the ALJ's treatment of his VA disability evaluation. Doc. 15 at 13–14.

A decision by a government agency other than the SSA is evidence, 20 C.F.R.

---

[13]The Eleventh Circuit has stated, "[E]ven if we assume … the HALLEX carries the force of law—a very big assumption—the ALJ did not violate it." *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009). In a recent unpublished opinion, the court mentioned the due-process issue generally (although not concerning the HALLEX specifically) but did not decide it. *Santos v. Soc. Sec. Admin., Comm'r*, No. 17-13605, 2018 WL 1830908, at *4 (11th Cir. Apr. 17, 2018) ("Because Santos cannot show prejudice, we need not consider Santos's arguments about whether the ALJ followed its internal rules or whether its failure to do so could constitute a violation of due process."). It likewise is unnecessary for the Court to decide here whether an ALJ's failure to follow internal policies could constitute a constitutional due process violation.

§ 404.1512(b)(1)(v), but it is not binding because it is based on that agency's rules instead of social security law, 20 C.F.R. § 404.1504. Still, because an ALJ is "required to evaluate all the evidence in the case record that may have a bearing on [the] determination or decision of disability, including decisions by other governmental and nongovernmental agencies[,] … evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

The VA uses a disability rating schedule to determine the level of a veteran's disability and his monthly benefits. *Guerra v. Shinseki*, 642 F.3d 1046, 1047–48 (Fed. Cir. 2011). The ratings in the schedule are based on an assessment of the reduction in the average veteran's earning capacity from service-connected injuries, diseases, or conditions. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. A disability is rated in 10 percent increments from 0 percent to 100 percent. 38 U.S.C. § 1155. A veteran rated at 10 percent on average has 90 percent of the earning capacity of a nondisabled veteran. *Guerra,* 642 F.3d at 1047. A veteran rated at 100 percent is deemed totally disabled. *Id.* Some veterans have multiple service-connected disabilities. *Id.* To decide his or her overall disability rating, the VA assesses each disability individually according to schedules in the Code of Federal Regulations at title 38, chapter 1, part 4, and then combines the individual ratings to calculate a combined disability rating. *Id.*

The Eleventh Circuit has observed that a claimant must "satisfy a more stringent standard to be found disabled under the Social Security Act." *Pearson v. Astrue,* 271 F. App'x 979, 981 (11th Cir. 2008). But the Eleventh Circuit has held that, generally, an ALJ should give a VA disability rating great weight.[14] *Brady v. Heckler,*

---

[14]The "great weight" jurisprudence appears to have originated in cases involving VA disability ratings of 100 percent and no consideration of them whatsoever. *See, e.g., DePaepe v. Richardson,* 464 F.2d 92, 101 (5th Cir. 1972) ("The examiner did not give any consideration in his findings to the fact that the VA had rated appellant as 100 percent unemployable although he did mention it in evaluating the evidence. While such a rating is not binding on the Secretary, it is evidence that should be considered and it is entitled to great weight.") (citing *Pulaski v. Finch,* 415 F.2d 613, 618 (3d Cir. 1969) ("It is clear

15

724 F.2d 914, 921 (11th Cir. 1984).

In an April 2014 VA disability-rating evaluation, under, "What VA is Proposing," the VA divides disabilities into "unfitting" and "claimed."[15] Tr. 102–03, 113. For "unfitting" disabilities, it lists the medical description of the disability and the proposed disability percent assigned. It lists "cervical degenerative disc disease: 40%"; "lumbar degenerative disc disease: 40%"; "left patellar chondromalacia with medial tibia stress syndrome (also claimed as shin splints): 30%"; "right patellar chondromalacia with medial tibia stress syndrome (also claimed as shin splints): 20%." Tr. 102. It states the proposed combined rating for unfitting disabilities is 80 percent. Tr. 102. It then lists the following for service-connected claimed disabilities: "benign paroxysmal positional vertigo with hearing loss and tinnitus (also claimed as dizziness): 30%"; "right shoulder degenerative arthritis (dominant): 20%"; "left lower extremity radiculopathy and sciatica associated with lumbar degenerative disc disease: 20%"; "right lower extremity radiculopathy and sciatica associated with lumbar degenerative disc disease: 20%"; "left upper extremity neuralgia and radiculopathy (also claimed as numbness [in] fingers and left shoulder condition) associated with cervical degenerative disc disease: 20%"; "right upper extremity neuralgia and radiculopathy (also claimed as numbness [in] fingers) associated with

---

from the record before us that it apparently escaped the attention of the Trial Examiner, the Appeals Council, and the District Court, that the VA had classified Pulaski as 'permanently and totally' disabled as a result of various physical ailments. Since this critically relevant and material evidence was overlooked below, we must vacate the judgment of the District Court and order that the case once again be remanded to the Secretary.")).

[15] A detailed disability rating explanation is in the record at Exhibit 1A, Tr. 100–28. The evaluation states, "It does not constitute a final decision by VA. This letter includes what VA is *proposing* for service connection, your *estimated* VA entitlement amount, and *approximate* VA payment start date." Tr. 102 (emphasis in original). There is no final determination in the record. The disability rating evaluation is copied again later in the record. Tr. 219–46. The Commissioner does not contend the proposal should not be considered.

cervical degenerative disc disease: 20%"; "right wrist strain (dominant): 10%"; "atopic dermatitis (also claimed as skin condition, feet): 10%." Tr. 102–03. It also lists several conditions for which the VA assigned 0% disability. Tr. 103. It concludes the proposed "total combined rating for unfitting and claimed service-connected disabilities is 100%." Tr. 103. The decision lists the evidence considered in the determination, Tr. 116, and for each impairment lists reasons for the disability percent assigned, Tr. 117–27.

>Addressing the VA disability-rating evaluation, the ALJ stated:

> I have taken note that the Department of Veterans Affairs has assigned the claimant a service-connected disability rating of 100% (Ex. 1A). However, I have given little weight to the Department of Veterans Affairs determination. The disability determination processes utilized by the Department of Veterans Affairs and the [SSA] are fundamentally different. Department of Veteran's Affairs does not make a function-by-function assessment of an individual's capabilities (i.e, determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings. In addition, the medical evidence, including the claimant's conservative treatment history, does not support the severity of limitation indicated by this rating. Therefore, I have given the rating little weight.

Tr. 23.

Beshia contends the ALJ failed to apply the correct legal standard to the VA disability rating. Doc. 15 at 13–14. The Commissioner responds that the ALJ correctly stated disability determinations from other agencies are not binding on the SSA, the evaluation predates the period of disability at issue and therefore would not affect the substantial evidence supporting the ALJ's finding Beshia was not disabled, and substantial evidence supports the ALJ's decision that Beshia was not disabled.[16]

---

[16]The Commissioner amended 20 C.F.R. § 404.1504 in January 2017 to state that the SSA "will not provide any analysis … about a decision made by any other

Doc. 18 at 15–18.

Had the ALJ relied only on the differences between SSA and VA standards to give little weight to Beshia's VA disability rating, remand may well have been warranted. *See Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) (remanding where the ALJ said only, "'The undersigned has considered this [VA] opinion, noting that such program has different criteria for deciding whether an individual is 'disabled' or 'unemployable', and, therefore, gives this opinion little weight.'"); *accord Daniels v. Berryhill*, No. 3:16cv412-WC, 2017 WL 2177336, at *5 (M.D. Ala. May 17, 2017) (unpublished); *Dunham v. Colvin*, No. 2:15-cv-622-GMB, 2017 WL 253979, at *3 (M.D. Ala. Jan. 19, 2017) (unpublished). *But see Pearson,* 271 F. App'x at 981 ("The record establishes that the administrative law judge considered the rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act.").

But here, the ALJ included the additional reason that "the medical evidence, including the claimant's conservative treatment history, does not support the severity of limitation indicated by this rating." Tr. 23. In finding an RFC limited to sedentary work with many other limitations (unskilled work; only occasional stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; avoidance of exposure to hazards such as heights or machinery with moving parts; and only frequent reaching with his right upper extremity, Tr. 20), the ALJ did not reject all findings within the VA evaluation but only the severity of the limitation (total disability) indicated by a 100 percent VA rating because the medical evidence, including Beshia's conservative treatment

---

governmental agency … about whether [a claimant is] disabled, blind, employable, or entitled to any benefits." 82 Fed. Reg. 5844, 5864 (Jan. 18, 2017). The Commissioner concedes the amended regulation does not apply here because of when Beshia filed his claim but argues the change "provides further support for the Commissioner's position that the VA's rating decision is not relevant in Plaintiff's case." Doc. 18 at 16 n.8.

18

history, did not support it. Tr. 23. Substantial evidence (discussed above in the analysis of Beshia's first argument) supports the ALJ's finding that the evidence did not support a finding of total disability.

Because the ALJ adequately considered the VA rating, remand to reconsider it is unwarranted.

## V.     Recommendations

I recommend:

(1)     affirming the Commissioner's decision;

(2)     directing the Clerk of Court to enter judgment under sentence four of 42 U.S.C. § 405(g) for Nancy A. Berryhill and against Samson Beshia; and

(3)     directing the Clerk of Court to close the file.[17]

**Entered** in Jacksonville, Florida, on August 14, 2018.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     The Honorable Roy Dalton
       Counsel of record

---

[17]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.